## Case No. 8,909.

### McNALLY v. MEYER et al.

[5 Ben. 239;[1] 14 Int. Rev. Rec. 38.]

District Court, S. D. New York. June, 1871.

COLLISION — RIVER — UNRELIABLE TESTIMONY—HELMSMAN—APPROACHED FROM BEHIND.

1. Nothing is more unreliable than testimony from those on one moving vessel, as to the absolute actions of another moving vessel.

[Cited in The Mary Ann, 11 Fed. 338.]

2. The only safe reliance, as a general rule, as to the course and deflections of a vessel, is the testimony of those who hold her helm in their hands.

[Cited in The Doris Eckhoff, 1 C. C. A. 494, 50 Fed. 139.]

3. A steamer, being approached from behind by another steamer, coming up on her starboard side, on a rounding course, intending to cross her bows from starboard to port, is under no obligations to promote that movement.

[Libel by Thomas McNally against Christopher Meyer and others to recover for damages sustained by collision.]

J. H. Choate and W. G. Choate, for libellant.

C. Donohue and W. J. Haskett, for respondents.

BLATCHFORD, District Judge. This libel grows out of the same collision which is the subject of the previous case of The

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

Newport [Case No. 10,185]. The libellant was the owner of the barge which was in tow of the Quickstep, and he sues the owners of the Quickstep, to recover the value of the barge, and of some property on board of her, and of the freight money for the cargo, of coal, and the amount of money paid to the Quickstep for the towage service. He does not sue the Newport.

The testimony is the same as in the case referred to. The libel contains substantially the same account of the occurrence as the answer contains in the suit against the Newport. The libel further charges fault in the Quickstep, in unnecessarily and improperly delaying to begin to tow the barge from Jersey City to the Atlantic Docks, so that she encountered the Newport, No proof was offered to sustain this allegation.

There are some averments in the libel which are not found in the answer in the case against the Newport, and serve to illustrate some remarks made by me in deciding that case. The libel avers, that, just at the moment when the Newport was rounding on her course up the East river, outside of the Quickstep, the Quickstep, without notifying her intention by whistle or otherwise, sheered to starboard, with the barge, across the course of the Newport, and then, in that position, shut off her steam. The rounding of the Newport on her course up the East river, was a rounding to port, which required starboarding, and, therefore, indicates a swinging of the Newport to port by starboarding, which would, even if the Quickstep kept a straight course, cause the Quickstep to appear to those on the Newport to be swinging to starboard by porting. Daily experience in the trial of collision cases shows that nothing is more unreliable than testimony from those on one moving vessel as to the absolute actions of another moving vessel. The irresistible propensity is to regard your own vessel as stationary with reference to the other vessel, and to attribute all deflecting movement to the other vessel. The other vessel, a moving object, is alone in the eye. Unmoving objects are not kept in view, as tests of movements in the vessels. The testimony which results is honest, but illusory, deceptive and unreliable. The only safe reliance, as a general rule, as to the course and deflections of a vessel, is the testimony of those who hold in their hands her wheel or her tiller. A change of bearing between two vessels, which may be the result of three things—a change of course wholly by one, a change of course wholly by the other, or a change of course by both—can give no reliable indication to an observer on either vessel, who judges merely from looking at the other vessel, as to which one of the three things has produced such change of bearing.

The libel also states, that the Quickstep was proceeding in a nearly straight course towards the East river, at no great dis-

tance from the Battery, bound for the Atlantic Docks in Brooklyn, and that, as the Newport came behind, and outside of, the Quickstep, and manifested her intention of leaving the Quickstep on her, the Newport's, port side in her course up the East river, it was a fault in the Quickstep to sheer to starboard at the moment when the Newport was rounding up on the starboard side of the Quickstep, and across the intended course of the Quickstep, and to not take precautions to allow the Newport to pass up the river, before attempting to tow the barge across. In so far as this statement in the libel advances the view that the Quickstep, being approached from behind, when bound to the Atlantic Docks, by a steamer which she saw was coming up on her starboard side, and intending to cross her bows from starboard to port, was under obligations to promote such movement, it is contrary to the settled law. The Quickstep had a right to her course, and the Newport, bound up the East river, had no right to run around her, in the way claimed in the libel, or to call upon the Quickstep to give way.

Although the owners of the Newport are not parties to this suit, the observations growing out of the libel are especially pertinent, for the reason that the libel was signed and verified by the proctor for the libellant, who was also the proctor for the claimants in the suit against the Newport, and signed and verified the answer in that suit.

The libel must be dismissed, with costs, on the ground that no fault is shown to have been committed by the Quickstep.