THE MICHAEL DAVITT.[1]

*(District Court, N. D. New York.    October 23, 1886.)*

COLLISION—TUG'S FAILURE TO GIVE NOTICE OF APPROACH—PASSAGE THROUGH WATERS WHEREON VIEW IS OBSTRUCTED — FIFTH RULE OF BOARD OF SUPERVISING INSPECTORS.
    "Whenever a steamer is nearing a short bend or curve in the channel, where, from the height of the bank or other cause, a steamer approaching

[1] Reported by Theodore M. Etting, Esq., of the Philadelphia bar.

from the outside direction cannot be seen for a distance of half a mile, the pilot of such steamer, when he shall have arrived within half a mile of such curve or bend, shall give a signal by one long blast of the steam-whistle." A failure to comply with this regulation, coupled with the circumstance that, until they were in close proximity, neither vessel was aware of the presence of the other, is sufficient to charge both with negligence.

In Admiralty. Collision. Libel *in rem* by the owners of one of two colliding vessels.

*Benjamin H. Williams*, for libelants.

*George Clinton*, for respondent.

COXE, J. On the eleventh of September, 1885, at about 2 o'clock in the afternoon, a collision occurred between the steam-tugs Eagle and Davitt, on the Tonawanda creek, about 50 feet from its mouth. The Davitt was proceeding down the Niagara river, from Buffalo to Tonawanda. The Eagle was passing down the creek, destined for a point half a mile up the river. The creek, at its mouth, is about 175 feet in width, and navigable from shore to shore. The view from the creek to the river, and *vice versa*, was obstructed by lumber piles along the banks of each, so that the tugs did not discover each other until they were in close proximity. The Davitt then blew one blast upon her whistle, and was answered by a similar blast from the Eagle, indicating that each would keep to the right.

Each party has endeavored to prove unskillful seamanship on the part of his adversary after the tugs became aware of each other's presence. If the controversy were confined to what then took place, it would be a most difficult one to determine; for a record so replete with conflicting and irreconcilable statements is seldom presented to the court. All agree, however, that when the signals were exchanged the danger was imminent. According to the preponderance of proof, the space between the tugs at this time must be measured by less than 100 feet, and the time for action by less than 20 seconds. The peril was close at hand. It was a situation to unnerve the steadiest hand, and confuse calmest judgment. There is nothing, therefore, requiring severe criticism in the maneuvering of either tug at this time. Unquestionably, each endeavored, to the best of her ability, to avoid the accident. It would, in such circumstances, be unjust to impute negligence to a vessel because she departed, in some slight degree, from the strict rules of navigation, or to hold her liable because her master, having to do two necessary acts, reversed the order in which he should have performed them. It is quite clear that the cause of the collision must be sought for prior to the time referred to. The fault was in permitting the tugs to get into so hazardous a predicament. That both are responsible in this regard there can be but little doubt. Indeed, the presumption of mutual fault follows, as an almost necessary conclusion, from a mere statement of the fact that two steamers, unincumbered by tows, in a wide

and unobstructed channel, and in broad daylight, collided in the manner disclosed by this testimony.

*First*, as to the Davitt. The fifth rule adopted by the board of supervising inspectors provides that "whenever a steamer is nearing a short bend or curve in the channel, where, from the height of the banks or other cause, a steamer approaching from the outside direction cannot be seen for a distance of half a mile, the pilot of such steamer, when he shall have arrived within half a mile of such curve or bend, shall give a signal by one long blast of the steam-whistle." And a note, following the eighth rule, provides that "the foregoing rules are to be complied with in all cases, except when steamers are navigating in a crowded channel, or in the vicinity of wharves. Under such circumstances, steamers must be run and managed with great caution, sounding the whistle, as may be necessary, to guard against collision or other accidents."

These are precautions which, even in the absence of regulations, would be dictated by common sense and common prudence. That the Davitt failed to give the signal provided by the rule is conceded, but her master asserts that, when approaching the creek, he gave a warning signal, consisting of three blasts of the whistle, which was followed soon afterwards by another signal of two blasts. It is impossible to locate the points where these signals were given with anything like accuracy, for the master has made at least three contradictory statements upon the subject. The first was made on the day of the accident, when the occurrence was fresh in his memory, and it is, to some extent, corroborated by collateral facts and circumstances. He there asserts that when within about 100 feet of the point he noticed, across the point, a tug approaching, and immediately blew two whistles for the port side, and received no response. He then immediately blew one whistle, which was answered by the Eagle. If this is a correct version of the transaction, it needs no comment to prove that a grave fault was committed. To signal that he would take the left side, and attempt to take it, and immediately thereafter change his purpose and his helm, and signal for the right side, was a course calculated to mislead and perplex the pilot of the approaching vessel. It is true that the master of the Eagle testifies that he did not hear the two blasts from the Davitt. If they were given, he must have heard them, and there is some evidence, based upon the conduct of his tug, indicating that he did hear them, and shaped his course accordingly. But, in any aspect of the case, the conviction is strong in the mind of the court that the Davitt failed to take the precautions which the circumstances demanded. She was close to the river dock—probably not over 30 feet out—when she shot past the corner at a rate of speed sufficient to carry her to the middle of the creek before she could be successfully controlled. When she was in a position to see what was approaching in the creek her bows were across its mouth. She took this dangerous course, knowing that a tug was in the creek,

and that in maneuvering she had to contend against the swift current of the Niagara river. Surely this was a reckless disregard of the rule of navigation that in crowded channels, and in the vicinity of wharves, steamers must be managed with the greatest caution.

The foregoing considerations apply to the Eagle as well as to the Davitt. It is impossible to hold the latter in fault without including the former also. It is conceded that the Eagle, from the time she started from her dock until she was *in extremis*, gave no signal whatever, but proceeded, at the rate of about four miles an hour, directly down the creek, taking no precautions of any kind to notify passing vessels that she was about to emerge into the river. Of course this was negligence. The situation was similar in many respects to the case of *The Troy*, 28 Fed. Rep. 861, recently decided.

The libelants are entitled to a decree for one-half their damages and a reference to the clerk to compute the amount.