## THE JOHN CRAIG.

## THE ALPHA.

## THE GRACE DANFORTH.

(District Court, N. D. New York. March 13, 1895.)

1. COLLISION—EVIDENCE—NICE CALCULATIONS—POSITIVE TESTIMONY.

Nice calculations, based upon the assumed positions of vessels just before collision, when an error of a few feet in regard thereto would destroy the most plausible reasoning, must give way to the positive testimony of witnesses as to what they saw.

2. SAME—ENTRANCE TO CANAL—TUGS AND TOWS.

A large propeller, which grounded upon a mud bank at the mouth of the Blackwell Canal, in attempting to enter it from the Buffalo river just as a tug with a large barge in tow was coming out, *held* in fault for immediately backing off, and thereby narrowing the channel, before the barge had got past, thus contributing to a collision between them.

3. SAME.

The tug towing the barge also *held* in fault for turning suddenly westward after getting into the river without reducing speed, and thus throwing the stern of the barge in the opposite direction, and thereby contributing to the collision.

This was a libel for collision brought by the owners of the barge Wenona against the propeller John Craig and the tug Alpha. Subsequently, and on petition of the owner of the Alpha, the tug Grace Danforth was also made a party.

The libel alleges that the libelants' barge Wenona was, on the 13th of September, 1893, injured by reason of a collision with the steam propeller John Craig, caused by the negligence of the Craig and the tug Alpha which had the Craig in tow. The Craig and Alpha appeared and answered charging that the collision was due to the negligence of the Wenona and the tug Grace Danforth, which had her in tow. Subsequently, upon the petition of the owner of the Alpha, the tug Grace Danforth was made a party and filed an answer alleging that the injury was occasioned without fault on the part of the Wenona or the Danforth and was due solely to the unskillful seamanship of the Craig and the Alpha.

George Clinton, for libelants.

George S. Potter, for the Craig and the Alpha.

Harvey D. Goulder, for the Danforth.

COXE, District Judge. On the morning of September 13, 1893, the barge Wenona was being towed by the tug Grace Danforth down the Blackwell Canal, at Buffalo, bound on a voyage up the lakes. The Wenona is 193 feet long and 30 feet beam. On the day in question she was partly loaded and drew about 12 feet of water. She is a sailing vessel and was wholly under the control of the tug. The Danforth is a large and powerful harbor tug, about 75 feet long and 17 feet beam. The line between the tug and barge was about 25 feet in the clear. While the Danforth and Wenona were proceeding down the canal, bound out, the Craig, in tow of the Alpha, was coming up the Buffalo river, bound in, it being her intention to turn into and proceed up the Blackwell Canal. The Craig is a large and powerful propeller 288 feet in length and 42 feet

beam. She was loaded and drew about 16 feet of water. The Alpha is about the same size and capacity as the Danforth. The Alpha's line to the Craig was about the same in length as the Danforth's line to the Wenona. The Watson elevator is located at the junction of the Buffalo river and the Blackwell Canal. There is at this point a shoal of soft mud extending out several feet from the elevator dock. As the tugs approached the junction they gave the proper signals, the final agreement being that they should pass starboard to starboard. In attempting to turn into the canal the Craig ran upon the shoal and came to a standstill with her bow about 10 feet from the elevator dock. The Danforth after the signals were exchanged kept well over to the southerly side of the canal, passed the stern of the Craig in safety and kept on diagonally across the river. When near the propeller Armour, which was lying at the D., L. & W. coal docks on the opposite side of the river, the Danforth starboarded and headed almost directly west or out into Lake Erie. The effect of this maneuver was to head the Wenona in the same direction and as she passed the stern of the Craig a collision occurred, the starboard quarter of the Craig striking the Wenona about 45 feet from her stern breaking 30 of her stanchions and inflicting a long wound upon her starboard side. The Buffalo river is about 300 feet wide and the Blackwell Canal 200 feet wide. At the point of junction the channel is a little over 500 feet in width; that is to say, a line drawn from the northerly shore of the river to the southerly shore of the canal through the Watson dock would be a little over 500 feet. The day was bright and clear, there was little wind, and nothing in the elements which interfered with the free navigation of the harbor. The libelants and the Danforth maintain that the Craig and the Alpha are solely responsible for the accident. They insist that the Craig was negligent because she backed off the shoal and into the Wenona, whereas she should have stopped her engines and remained where she was until the Wenona had passed, and that the Alpha contributed by assisting in pulling the Craig off the shoal. The Craig and the Alpha deny that they were backing at the time of the collision and insist that while the Craig was lying motionless with her bow imbedded in the mud the Danforth approached at a dangerous rate of speed, for such a locality, and, by making a sudden turn before the Wenona had passed the point of danger swung her stern violently against the Craig, and that the Wenona helped to produce this result by keeping too near the center of the canal and because she did not secure the services of a second tug. In short, each of the four vessels is charged with some fault which produced or contributed to produce the collision.

The accusations against the Alpha and Wenona may be dismissed in a few words. Neither was guilty of a fault which contributed in any appreciable degree to the accident. The Wenona was entirely under the control of the Danforth and her steering seems to have been without just ground of complaint. It is not necessary to determine whether it would have been prudent for her to have taken another tug for the reason that the theory that a

second tug would have prevented the collision is based merely upon conjecture and unsubstantial presumption. The same is true of the Alpha. If the court should find that all the charges made against her are true it by no means follows that she contributed to the collision. The principal force which pulled the Craig off the shoal was her own wheel. Assuming that the Alpha supplemented this force, the line of her pull was not directly aft, but on an angle; so that if she exerted any force at all the tendency was to pull the propeller's bow to starboard and her stern directly away from the Wenona. If there were anything in the situation to prevent the application of this elementary rule of mechanics it should have been proved. There is nothing in the testimony which proves that the Craig was moved backward an inch by the Alpha. This leaves the controversy one between the Craig and the Danforth.

Counsel for these vessels have submitted ingenious arguments to prove that they were not at fault, but should the court accept both as correct it must be found that no collision occurred, for if the counsel for the Craig be correct in his conclusions she was stationary at the time of the accident, and if the counsel for the Danforth be correct the Wenona's stern had passed some distance beyond the Craig when the turn down the river was made. But the inquiry must begin with the unquestioned fact of the collision. This was not the result of inevitable accident. It took place in broad daylight when there was nothing in wind or water to make navigation dangerous. It was the result of bad seamanship. Either the Craig or the Danforth, or both, were to blame.

As to the Craig. Before the Danforth passed the stern of the Craig the latter's bow was imbedded in the mud at Watson's point and her stern was 300 feet down the river pointing about W. by N. The Craig is longer than the Blackwell Canal is wide, and it is probable that after running aground her stern was considerably less than 100 feet from the signal station dock on the southerly shore of the river. If the Craig backed while lying in this situation it was negligence. It was clearly her duty to suspend her efforts to get off the shoal during the few minutes necessary to enable the Danforth and Wenona to pass. To obstruct the channel still more was careless seamanship. I do not understand that this proposition, generally speaking, is disputed, but it is argued on behalf of the Craig that she did not back or attempt to back until after the Wenona had passed and even if she did back her position was such that she must have widened the channel instead of obstructing it. This argument is supported by nice calculations based upon the assumed positions of the vessels at the time of and just previous to the accident. When, however, it is remembered that an error of a few feet in the major premise may destroy the most plausible reasoning and that it is simply impossible to locate the vessels with perfect accuracy, the theory that the Craig could not have backed into the Wenona must give way before the testimony of witnesses who swear that they saw her back into the Wenona. The preponderance of testimony is to the effect that from the moment the bow of the Craig entered the mud it was her purpose to back out as quickly as

possible and that she never relaxed this purpose for a moment. The mud was soft, there was no great difficulty in pulling her out and the presumption is that she commenced to back almost immediately after she stopped and began to feel the force of the reverse action of her powerful engines. This view is supported by a large number of interested witnesses and, I think, by all the disinterested witnesses sworn in the cause.

With the fact of the Craig's backing so clearly established, it follows almost as a necessary inference that she must be held liable. The burden is strongly upon her to show that this dangerous maneuver did not contribute to produce the accident. She has not done so; she has advanced ingenious theories, but, as before stated, they must yield to the oaths of witnesses who were standing on solid ground and who swear that they saw the Craig back into the Wenona. The testimony of those stationed on moving vessels is, as to such matters, illusory, deceptive and unreliable. McNally v. Meyer, 5 Ben. 239, Fed. Cas. No. 8,909.

But was the Craig solely to blame? I cannot resist the conclusion that the Danforth might have prevented the accident, or at least lessened the force of the blow. Perhaps as succinct an account of the accident as any is that given by the boy who stood on the dock of the life-saving station. He says that there was about 75 feet of water between the stern of the Craig, after she had grounded, and the dock. That this was a narrow passage through which to tow a barge 193 feet long and 30 feet wide on a rounding course cannot be denied. The situation required the greatest care and caution on both sides. The witness continues as follows: "I saw the Danforth come down towing the Wenona and the Danforth took a sheer right across the creek into the Armour, and when she got there she pulled over. The Craig backed right up. I saw her move sternways and strike the Wenona." I am convinced after reading the testimony that the Danforth, in view of the position of the Craig, and of the fact that the Craig was "backing strong," should have reduced her speed and should have proceeded with the utmost care. Instead of doing this she "kept going right along" until she had almost reached the Armour on the north side of the river, and then without looking back to ascertain the position of the tow her master wheeled her around sharply to port, opened his engine wide and proceeded straight down the river. The tendency of pulling the bow of the barge thus suddenly to port was to swing her stern to starboard and directly against the backing Craig. This is, in my opinion, precisely what took place. Not only is this view corroborated by a large number of witnesses, including some of those called on behalf of the Danforth, but also by the character of the Wenona's wound. It is perfectly clear that the Craig could not have acquired much sternway. She was large, heavily loaded and had only a few moments before come to a dead halt with her bow in the mud. She could not have backed far and must have been proceeding at a snail's pace when the vessels came together. She could not have inflicted a wound 40 feet in length on the Wenona's quarter unless her backing were supplemented by the swinging of

the Wenona. In other words, it required the joint carelessness of the Craig and the Danforth to produce such a wound.

It is possible that the difficulty in formulating a theory of the collision, which can be followed to a perfectly satisfactory conclusion, is found in the fact that counsel have not attempted to point out any faults except those occurring at and just previous to the moment of collision when the vessels may almost be said to be in extremis. My own impression is that the negligence which brought about the disaster occurred some time before the Craig grounded.

It is thought that a cogent argument can be constructed to show that it was a grave fault for a heavily loaded propeller to attempt to enter a narrow canal when she knew that she would probably run aground at the entrance and that another steamer was coming down the canal so that a meeting at the turn was almost inevitable. When the Craig heard the Danforth's signals she could have slowed down, and, if necessary, passed the entrance of the canal and up the Buffalo river. But for the grounding of the Craig, no accident would have happened—this is beyond dispute. And yet the Craig knew that grounding was almost certain to follow her attempt to enter. The evidence is undisputed that large boats "generally fetch up there." To thrust such an immense vessel into a shoal at the mouth of a narrow channel already occupied by a tug and tow which are rapidly approaching the mouth, seems hardly compatible with prudent seamanship. The Michael Davitt, 28 Fed. 886; The Troy, Id. 861; The Iron Chief, 53 Fed. 507; The Osceola, 50 Fed. 326.

To a less extent these observations apply to the Danforth. Knowing what was likely to happen if the Craig attempted to enter the Blackwell Canal, knowing that a vessel a third longer than the canal is wide would probably run aground at the point and might block the entire entrance, would it not have been wiser to have stopped or to have slowed down still further so as to approach the point of danger with as little momentum as possible? This view of the subject,—so in accord with prudence, safety and common sense, at least from a layman's standpoint,—finds support in the record. The master of the Craig testifies:

"When we got in by the lighthouse, I am not certain whether it was the Alpha or the Danforth that blew a long whistle first, it was blown and answered. Q. What did that indicate? A. It was turning the corner and was supposed to stop. Two boats meeting along in there in that shape one will blow a long blast and the other will answer her and is supposed to check down and stop."

If either had checked down and stopped no collision would have occurred.

I make these suggestions with considerable hesitancy, for the reason that they have not been alluded to, although the cause has been presented by counsel of unquestioned ability and expertness in the law maritime. Possibly, however, the failure to do so may be explained on the supposition that neither counsel cared to advance an argument which might prove to be a two-edged sword.

As the result will be substantially the same whichever view is taken I prefer not to base the decision upon the considerations just alluded to, as it is entirely possible that these views may be ill founded, and, in any event, before they are accepted by the court counsel should have an opportunity to discuss them. The libelant is entitled to a decree against the Craig and the Danforth. A moiety of the entire damages, interest and costs should be charged against each. The Alabama, 92 U. S. 695; The Nicholson, 28 Fed. 889. As to the Alpha the libel is dismissed without costs.