## THE ERANDIO.

### (District Court, D. Maryland. June 28, 1908.)

1. COLLISION—SUIT FOR DAMAGES—CONFLICTING EVIDENCE.

    Conflicting estimates by the witnesses in a collision case in respect to speed and distances must be tested by the ascertained facts.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Collision, § 274.]

2. SAME—INEVITABLE ACCIDENT—NAVIGATING IN ICE.

    A steam vessel overtook and passed another in a river clogged with ice. She was the faster vessel, but, after taking the lead, she was impeded by the ice, and finally was stopped, when the overtaken vessel, then following in her wake, ran into her. It appeared that such following vessel kept an efficient watch on the one ahead, and when she stopped immediately starboarded her helm and reversed, but could not overcome her headway before coming up with the other vessel, nor get out of her track because of the interference of the ice. *Held*, that the collision was due to inevitable accident, and that neither vessel was in fault.

In Admiralty. Suit for collision.

Daniel H. Hayne, for libelant.
Robert H. Smith, for respondent.

MORRIS, District Judge (orally). I do not feel that I am called upon in this case to find that any of the witnesses have willfully misstated the matters as to which they have testified. Much of the testimony from witnesses on behalf of the Pawnee consists of estimates of time and distances and speed, as to which there is great liability to mistake, great liability to be swayed by inferences, and great liability on the part of the most honest witness of being led to testify in favor of a theory which he has already formed in his mind. It is the duty of the court, as far as possible, when there is a very great discrepancy in testimony, to take hold of such ascertained facts as tend to reconcile conflicting estimates.

There are many statements of the witnesses in this case in respect to speed and distance which, I think, must be tested by the surrounding circumstances of navigation. In the first place, a great deal of the case on behalf of the Pawnee is based on the supposed superior speed of the Pawnee after she had passed the Erandio, and the supposed resulting distance between the vessels when the Pawnee blew danger signals. Undoubtedly, the Pawnee was the swifter vessel. When she passed the Erandio, it was probably in a space of clear water at the point of passing and at a high rate of speed compared to that of the Erandio; but immediately after that the circumstances were somewhat changed. The Pawnee met ice, increasing ice, and the Erandio naturally, and almost inevitably, fell into the clear water of her track. It would be hard to keep a following vessel parallel to the track of the leading vessel under the circumstances, and not to have her sheer into the clear water. So that while the leading vessel, the Pawnee, was breaking the track, the Erandio was sailing in a clear channel. The one was losing her normal speed, and the other was going faster than would be normal for her to go in a channel clogged with ice. So, I think, a good deal of the discrepancy as to the supposed distance between the two vessels is explainable as having been the result of the theory of the witnesses on the Pawnee that the leading vessel was going much faster than she was, and the following vessel was not going as fast as she actually was.

It is very difficult to estimate distances in the situation in which those on board of the Pawnee were. Their attention was engaged with other matters. They had the ice to contend with. They were about to make a turn in the river. They had many things to engage their attention. There was no special reason why they should be looking back at the Erandio until they struck the ice and began to lose their headway. Therefore I am inclined to think that the testimony of those on the Erandio, whose business it was to watch the vessel in front, and who, as far as I can find, were alert and attentive to their duties, is preferable to the testimony of those who were simply looking backward from time to time and making an estimate of distances.

In order to find that there was such a distance as estimated by the witnesses for the Pawnee, I should have to find that the testimony of those on the Erandio, viz., that they saw the stopping of the leading vessel in the ice, that they at once put the helm hard astarboard, and reversed the engine full speed astern, before they heard the danger signals given by the Pawnee, was willfully false. If that testi-

mony is not true, then it is willfully false, because they have all testified most positively that before they got the signal they had observed the stopping of the Pawnee in the ice, and that, as soon as they observed it, they made the only maneuver possible for them to make, and it was a proper maneuver. They put their engine full speed astern and put their helm hard astarboard, in the hope that they might stop the Erandio, and if she did not stop she might be able to avoid a collision by going to the port side of the Pawnee, notwithstanding the ice. I think I must take the statements of these witnesses as substantially true. It was their business to watch the Pawnee. She was ahead of them in full, plain view, in broad daylight. It is not to be supposed that those on the Erandio, although watching the Pawnee when she was losing her headway and gradually slackening her speed, could at once tell that she was about to stop; but they saw it, as I can judge from their testimony, when it was first plainly noticeable, and, when it was plainly noticeable, they made the maneuver already referred to. I do not see what else they could have done under the circumstances. The fact the blow was so light, and that the damage was not greater, is strong evidence that they had very nearly checked the headway of their vessel. The fact that they did come up on the port side of the Pawnee is evidence that they did starboard their helm and, I think, hard astarboard it. The reason they did not increase the distance was that there was hard ice on their port side, and therefore they could not do as much with a hard astarboard helm as they might have done under other circumstances.

It is a case not without difficulty, but the best judgment I can form about it, after giving close attention to the testimony and listening to the very able arguments, which have aided me very much, is that it was a case of inevitable accident. I think the Pawnee did, under the circumstances, all that could be asked of her. She did not give the signal as soon as she began to lose headway in the ice. No doubt, they expected from moment to moment that they would be through the heavy ice, and that they would be able to resume their former speed; but they did give the signal as soon as they thought it was reasonably necessary and reasonably proper. The following vessel, the Erandio, I think, as soon as she noticed the loss of headway, and surely as soon as she got the signal, made the only maneuver she could make, and it was not successful. It is the case of two vessels in a river clogged with ice and their navigation hampered by the presence of the ice. In such a situation an accident is exceedingly probable, although all ordinary care is observed. It is to be borne in mind that, although the Pawnee was the leading vessel at the time of the collision, she had a few minutes before been the overtaking vessel, and had pushed ahead of the Erandio, and in a measure had participated in bringing about the situation which led to the risk of collision.

Although cases of inevitable accident are rare, it seems to me this is one, and I will sign a decree in conformity with this view of the case.