## THE GEORGE W. PEAVEY.

(District Court, W. D. New York. October 4, 1909.)

1. COLLISION (§ 125*)—ACTION FOR DAMAGES—EVIDENCE.

In a collision suit, the testimony of the officers and crew as to what occurred on their own vessel is entitled to more weight than that of witnesses on board other vessels, who merely assert their opinions based on what they observed.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 268–271; Dec. Dig. § 125.*]

2. COLLISION (§ 95*)—STEAMER AND TOW MEETING—SHEER OF TOW.

A collision at night in the canal through the St. Clair Flats, between a barge in tow passing down and a steamer going up, held, on conflicting evidence, to have been due solely to the sheering of the barge to the east side of the channel and against the steamer, which was without fault.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 200–202; Dec. Dig. § 95.*]

In Admiralty. Suit by W. S. Brainard against the steamer George W. Peavey for collision. Libel dismissed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Goulder, Holding & Masten, for libelant.

Hermon A. Kelley (Hoyt, Dustin, Kelley, McKeehan & Andrews and G. W. Cottrell, of counsel), for respondent.

HAZEL, District Judge. This is a suit for damages for injuries to the schooner barge Chippewa, caused by a collision between said barge and the large steamer George W. Peavey, on the night of July 28, 1906, in St. Clair Flats Canal, at the mouth of St. Clair river. The steamer Cherokee, with the barge in tow, was downbound from Escanaba to Cleveland. When she arrived in St. Clair Ship Canal, she checked her speed and blew a passing signal to the steamer Brittanic, which was proceeding up the canal, and as she passed the Brittanic she exchanged passing signals with another steamer, the George W. Peavey, which was about 700 feet behind the Brittanic, also upbound. The Cherokee and tow were on the right or west side of the canal, not far distant from the west pier. The Chippewa had passed the stern of the Brittanic, when she suddenly diverged from her true course on the west side of the canal, and on perceiving that the Peavey, which had passed the Cherokee and was distant about 200 feet, was in close proximity, her master ran forward, intending to hail an admonition to the Peavey to port her wheel, but before he did so the Peavey hailed the barge to port her wheel. Her master replied that the barge had ported, whereupon the Peavey, complying with the hailed request, hard aported her wheel and reversed her engines, there being nothing more she could do to avoid the collision, but nevertheless the bows of the vessels came forcibly together. From the force of the impact and under a hard aport wheel the Peavey immediately swung over against the east pier, and in doing so her port quarter struck the barge a second blow on her port bow, which caused the latter to swing against the opposite pier.

The principal fault charged in the libel is that the speed of the Peavey was excessive, and that she failed to keep to her own side of the canal a sufficient distance to allow the Chippewa to pass in safety The chief fault charged by the respondent, in attributing the collision to the Chippewa, is that she sheered to port and into the Peavey's bow while the latter was in her proper position on her own side of the channel. The weather was slightly clouded, but clear, with no wind, and nothing to interfere with seeing the lights on the vessels. The tow line used by the Cherokee was 700 feet long. The canal which leads from the lower part of St. Clair river into Lake St. Clair, a distance of 7,227 feet, is 292 feet wide. The vessels were properly manned and equipped, the lights were burning bright, the officers and crew were performing their duties, and there were lookouts properly stationed. The Peavey was without cargo, and the Chippewa laden with 2,066 tons of iron ore. The testimony as to the speed of the Peavey and her position in the canal is in sharp conflict, and it can scarcely be reconciled.

What has been aptly said in other collision cases is recalled by the situation presented—that seamen in litigations of this character invariably give testimony in favor of the proper navigation and careful-

ness of their own ship and challenge the skill and precaution of the other. The libelant claims that the speed of the Peavey exceeded 8 miles an hour, the limit fixed by the rules adopted for navigating the St. Clair Flats Canal, and that she was proceeding through the canal at the rate of about 11 or 12 miles an hour. It is pointed out that she was proceeding at such excessive speed, so as to readily overtake and pass the Brittanic when she got outside the canal, where passing was permitted, and before reaching Southeast Bend, where the channel becomes tortuous; but upon this contention I am not satisfied by the testimony and the estimates of speed which have been given. As the steamers were each proceeding at the rate of perhaps 6 or 7 miles per hour, the combined rate of speed in passing being about 14 miles per hour, their speed and the darkness undoubtedly materially interfered with the formation of reliable estimates of the speed of either vessel by persons on board the other. The testimony of the Peavey's officers and crew to establish a speed of less than 8 miles an hour is more reliable. In view of the circumstances, the rule applies that the testimony of the officers and crew as to what occurred on board their own vessel is entitled to more weight than that of witnesses on board other vessels, who merely assert their opinions based upon what they observed. The Alex. Folsom, 52 Fed. 403, 3 C. C. A. 165; The Hope (D. C.) 4 Fed. 89; The Alberta (D. C.) 23 Fed. 807. The master, engineer, assistant engineer, and wheelsman on board the Peavey testified that an order was given by the master to the engineer to reduce her speed, an order which was promptly obeyed. I think the evidence establishes that she was proceeding in the canal at the time of the collision at the rate of about 6½ miles per hour through the water. The libelant has not sustained the burden of proving excessive speed, or that the collision resulted in consequence thereof.

The testimony is in conflict as to the distance apart at which the Peavey and the Cherokee passed each other. On behalf of the Peavey it is claimed to have been from 75 to 100 feet, while the witnesses for the Cherokee state that it was 40 or 50 feet. Whatever the distance between the passing vessels, it did not excite apprehension, although such distance bears upon the charge of fault that the Peavey was out of her course and west of the center of the canal. Libelant concedes that, when the stern of the Brittanic passed the bow of the Chippewa, the Chippewa sheered to the left and toward the approaching Peavey. Now to what extent did she sheer? If it is true that the Peavey was only about 40 feet from the Cherokee when they passed, and kept on a straight course, and the Cherokee and barge were only 30 feet from the west pier, it would seem perfectly evident that the Peavey selfishly took more of the channel than she had a right to under the circumstances, and the subsequent sheer of the barge was probably restricted to water in which she had a right to maneuver; but I think the probabilities of the situation point to a different state of facts. In my opinion, considering the undisputed testimony, as well as the probabilities of the case, the Peavey, when passing the Cherokee, was a little east of the center of the canal. The master testified, and he is corroborated by the crew, that she was about 50 feet from the east pier; but I think the probabilities are that she was about 75 or 80 feet therefrom, and

that the distance between the Cherokee and the Peavey, when passing, was about 80 feet.

As the record stands, the reasonable presumption is that, when the Peavey consented to direct her course to starboard, she, having received a signal from the Cherokee requesting such passing, edged over nearer to the east pier. In this situation, it being conceded that she continued on a straight course, she would not have come in contact with the barge, had not the barge deviated from her course beyond the space claimed by the libelant. It is not questioned but that her sheer was unavoidable. That it was controlled, however, within 60 feet of the west pier, or within 30 feet of her course in the wake of the Cherokee, is not proven. In all probability the sheer of the Chippewa or divergence from her path extended a little beyond the middle of the canal and into the bow of the Peavey. Whether by prudence and care, in view of the situation, her sheer could have been prevented or controlled, is a question that need not be specially passed upon. It is enough that the barge did not keep on her side of the canal, but deviated to port, and interfered with the safe navigation of the steamer Peavey, which was without fault.

Accordingly the libel must be dismissed, with costs. So ordered.