## THE JAMES A. CARNEY.

(District Court, S. D. Alabama. November 27, 1911.)

No. 1,305.

**1. EVIDENCE (§ 574*)—OPINION EVIDENCE—WEIGHT.**

In a collision suit, the testimony of officers and crew as to what occurred on their own vessel is entitled to more weight than that of witnesses on board other vessels, or on shore, who merely assert their opinions, based on what they observed.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2400; Dec. Dig. § 574.*]

**2. COLLISION (§ 85*)—STEAM VESSELS MEETING IN FOG—FAULT.**

Evidence considered, and *held* insufficient to show that a steamer passing down from Mobile to the bay in the daytime in a dense fog and near the west shore was in any way in fault for a collision with a schooner coming up in tow alongside a launch; it appearing that she was proceeding at half speed, which was about 4½ miles an hour, that she had a lookout and kept sounding fog signals, and that she did not see nor hear the other vessels until they were within about 75 feet, and then at once reversed.

[Ed. Note.—For other cases, see Collision, Dec. Dig. § 85.*

Signals of meeting vessels, see note to The New York, 30 C. C. A. 630.]

**3. WORDS AND PHRASES—"MODERATE SPEED."**

"Moderate speed" is not a fixed rate of miles per hour, but something materially less than the vessel's full speed, depending upon surrounding circumstances.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 5, pp. 4551, 4552.]

In Admiralty. Suit by Frank Nelson, as owner of the fishing schooner Marietta, against the steamer James A. Carney. Decree for respondent.

F. K. Hale, Jr., for libelant.
Pillans, Hanaw & Pillans, for claimant.

TOULMIN, District Judge. This is a libel filed by Frank Nelson, as owner of the fishing schooner Marietta, against the steamer James A. Carney, to recover damages for an injury to the schooner, and for the loss or damage of certain personal property belonging to the libelant, on board of the schooner, in consequence of her being injured by the said steamer in a collision with her in January, 1911, in the Mobile river, near the mouth of said river, where it enters Mobile Bay. The libel alleges negligence on the part of the steamer, and absence of negligence on the part of the schooner.

The answer of the steamer alleges, in substance, that the collision complained of occurred about 9:20 o'clock on the morning of January 29, 1911; that, the morning being foggy, she proceeded down the river at a slow rate of speed, keeping a sharp lookout for other craft, and sounding her fog signals as required by law as she proceeded; that she proceeded down the west bank of the river, which lay on her starboard hand, encountering thick fog in her progress

from the time she left her mooring place, when suddenly appeared from the fog said schooner, lashed alongside and in tow of a gasoline launch, and, when first discovered, was quite close to said steamer; that no signal of horn or whistle had been previously given of the approach of said schooner and launch by them; and that the steamer, discovering the risk of a collision, was at once caused to be reversed full speed astern in the effort to stop or kill her headway before the collision took place.

The contention on the part of the libelant is (1) that the steamer was running at too high a rate of speed; and (2) that when approaching the schooner, so as to involve risk of collision with her, she failed to stop and reverse, or to slacken her speed.

[3] No specific rate of speed has ever been established by which to determine the lawful rate permissible in a fog. But the rule is that "every steam vessel shall when in a fog go at a moderate speed." Moderate speed is not a fixed rate of miles per hour, but something materially less than the vessel's full speed, depending upon surrounding circumstances.

The evidence of several witnesses testifying in this case on behalf of the libelant as to the speed of the steamer when descending the river, on the morning of and a short time before the collision, and before the schooner had been sighted by them, was, in substance, that they were on the west bank of the river on one of the docks of the city, on Sunday morning—the morning the collision occurred—and saw the steamer Carney pass down the river, running at what "looked" to them to be about her usual speed, about 7 or 8 miles an hour; that they often saw her pass up and down the river in her daily trips to and from the city to the eastern shore of Mobile Bay, and had often observed her. They also testified that there was a thick or heavy fog at the time, and a pretty swift current, which some of them estimated to be 3 or 3½ miles an hour. The steamer was about 60 feet east from the bank of the river.

The evidence on the part of said steamer as to her speed was the testimony of her officers, consisting of the master, the mate, who was lookout, the pilot, and the engineer, all on duty at their respective posts on the passage down the river and at the time of the collision. There were two or three passengers aboard, who also testified on the same point. These officers testified that the steamer was going at about half speed from the time she left the wharf. Her full speed was considered to be 9 miles an hour. On this occasion, on account of the thick fog, she was going at the rate of about 4 to 4½ miles an hour, varying at times a very little, more or less, and could not have gone much slower and maintained her steerage power, except by working her engine by hand. The testimony of the passengers referred to was that the steamer was running slowly in a fog, down and near the west bank of the river. They did not know the rate of speed. The place of collision shown by the proof was a little over a mile and a half from the dock whence the steamer sailed. There is no dispute on the evidence as to the time the steamer left the dock, nor as to the time or place the collision occurred. She left

the dock at 9 or 9:01 a. m., and reached the place of collision at 9:20 or 9:22 a. m., from which it appears that she was running at or about a rate of 4½ miles an hour. These facts being ascertained, conflicting estimates by the witnesses in respect to speed and distances must be tested by them. The Erandio (D. C.) 163 Fed. 435.

[1] In a collision suit, the testimony of the officers and crew as to what occurred on their own vessel is entitled to more weight than that of witnesses on board other vessels, or on shore, who merely assert their opinions on what they observed. The George W. Peavy (D. C.) 173 Fed. 715; The J. G. Gilchrist (C. C.) 173 Fed. 666.

[2] The proof in this case shows that the steamer James A. Carney made daily trips between the city of Mobile and the eastern shore of Mobile Bay, carrying passengers, etc.; that it was a part of her schedule to leave said city every Sunday morning at 9 o'clock for the landings on said eastern shore. On January 29, 1911, she left Dauphin Street wharf, as was her custom, and proceeded down the west side of Mobile river about 60 feet from its west bank. There was a thick fog prevailing, which hung low down over the water. There was no wind, but an outgoing current, estimated at about 3 miles an hour. The steamer was proceeding at slow speed, blowing her fog whistle at least once a minute as she proceeded.

The schooner Marietta, in tow of and lashed to the side of the launch Gertrude, was ascending the river on its west side, about 40 or 45 feet from its west bank. They were moving very slowly, stated by the captain of the launch as not exceeding a mile an hour. The captain of the launch was alone on her. The owner and captain of the schooner was acting as lookout on her, and "was on the lookout for the Carney," being familiar with the schedule for her Sunday morning trips to the eastern shore of Mobile Bay. He had an assistant, named Frank Nelson, Jr., on the schooner with him. It does not appear that the schooner had a fog horn. No fog signal was heard from her. The launch had an ordinary fog horn, but did not sound it. She had no mechanical whistle, but had a pump whistle operated by hand. The testimony of the captains of the launch and schooner was that the captain of the launch blew his pump whistle regularly at short intervals all the way as they proceeded up the channel.

The testimony of the officers of the Carney was that they heard no fog signal and no other signal from the launch and schooner before they were seen to "loom up" out of the fog, and then they were close at hand, approaching each other "head on," or nearly so. The distance apart was variously estimated by witnesses on both sides. The officers of the Carney stated the distance was from 60 to 75 feet. Frank Nelson, Jr., aboard the schooner, and a witness for libelant, stated it was 75 feet; that he could see about 75 feet through the fog. The captains of the launch and schooner, respectively, estimated the distance at from 200 to near 300 feet. It appears from the evidence that neither vessel heard any signal from the other before they came in sight, in close proximity to each other, as stated.

The evidence of the captain of the launch, on the part of the schooner, was that when he first saw the stack of the Carney, some-

where in the neighborhood of 300 feet ahead of him, he blew two whistles; that he was then about 40 or 45 feet from the west bank of the river; that in about a minute or less her hull appeared to him, and she was then a little inside of him; that he saw he could not get inside, and he told the captain of the schooner to port the helm, but as he got about 60 feet from the Carney she wheeled over and struck the schooner on her port side; that, in order for her to have gone to port, she would have had to starboard her helm. This witness also stated that it did not appear to him that she was backing, or that she had stopped.

The evidence of the officers of the Carney was that, as soon as the schooner was seen to "loom up" in the fog, she reversed her engines, blew one blast of her whistle, and ported her helm; that all these things were done almost simultaneously, and although the paddle wheels of the steamer were turning backward, and the steamer was "sheering to the right some," the launch and schooner having starboarded and changed their course to the northeastward, crossing the course and bow of the Carney, the distance between them and the Carney was not sufficient to enable the latter to overcome her headway or forward motion and to get in backward motion, although her speed was materially slackened. The master of the Carney was on the upper deck near the pilot house, and the mate, the lookout, was on the "forward," the lower or main, deck.

These officers are substantially corroborated by several of the passengers who were aboard the Carney. The testimony of the officers and crew as to what occurred on their own vessel is entitled to more weight than of witnesses on board other vessels, who merely assert their opinions, based on what they observed. The George W. Peavy, supra; The J. G. Gilchrist, supra.

The weight of the evidence convinces me that the steamer James A. Carney was not guilty of fault, and is not liable in this suit.

The libel is dismissed.